Case number 19-5703, Zeon Chemicals LP v. United Food and Commercial Workers, Local 72D. Argument not to exceed 15 minutes per side. Mr. Wall, you may proceed for the appellate. Good morning. Good morning. May it please the Court, Michael Wall for the appellate, UFCW, Local 72D. I'm adjourning four minutes. The only question before the Court is whether the labor arbitrator was arguably construed under the party's collective bargaining agreement. If he was, then the District Court made an error by vacating the award and we are asking the Court to reverse that decision. The only three potential bases for vacating a labor award since 2007, in this circuit, since the Court issued the on-call decision in Michigan Family Resources, are that the arbitrator was engaged in fraud and dishonestly, that the dispute in general was characterized, wasn't committed to arbitration at all, or that the arbitrator was not even arguably construing the contract. And only the third of those is really at issue here. So what's the best U.S. Supreme Court case that says that substantive due process principles apply to contract interpretation? I don't know of a Supreme Court case. I know of at least three from the Sixth Circuit that have said that. We cited two reported cases in our collaborative, which were Johnston Boiler and Tennessee Valley Authority v. Tennessee Valley Authority Trades and Labor Counseling. More recently, there was MGM Gray in Detroit. All three of those cases recognized or accepted the idea that just cause has a due process component. Ultimately, it just changes from substantive due process to due process. I think in actually one of those cases, I can't remember which of the three, it may have been MGM Gray, there was reference to substantive due process. The arbitrators say that the due process component of just cause has a substantive aspect and a procedural aspect. Of course, that has nothing to do with substantive due process under the 14th Amendment of the Constitution. And therein was the district court's error, we allege, in misunderstanding what the arbitrator was doing. If I may ask you, was this a one-off for this arbitrator to use substantive due process? Or is this a term of art in the labor world that is used, even though we generally understand it, for non-labor lawyers to meet the Constitution? Is there something in the labor world that says substantive due process means something relating to a contract? Honestly, I think due process counting, the exact phrases used, it's kind of used loosely. Sometimes it's called industrial due process, sometimes procedural, sometimes substantive. What the arbitrator was really talking about here, we might call a procedural. Is this called industrial grand justice? Well, in its own sense, industrial justice, of course, that's a forbidden area. Right, but certainly due process is a well-accepted part. If he should have called it procedural due process, that's fine. What he was clearly talking about, though, was he said that the company had a due order. I don't know the answer to that question. I'm told that, yes, he was aware. What he's referring to— So I assume you would agree it's not interpreting a contract to when you get 20 days of provision to say, I'm just going to use my magic 8-ball and I'm just going to roll the dice, right? That's right. So I think that's right. I think I have to say that it doesn't work. The one thing about that, though, is it's perfectly arbitrary. It doesn't inherently favor either side. The one problem with substantive due process, which, of course, has no, I think, analogy involved, other than the use of contractual justification. It is not bad to people. You can find the substantive due process decision anywhere, including in the Constitution, where the people innovating in the right weren't happy with the outcome. This is the magic 8-ball, arbitrary. They can pick the side that wins. That can't be right. That's what seems to be damning about this decision. I can understand why the district court was very frustrated. It looks like it's on the brink of industrial justice. In fact, it is. It's a due process, which, how often does it lead to decisions where the judge doesn't praise the underlying policy of the new right they have found in the sky? And that seems to be exactly what's going on here. Every judge who sues this judge is deeply skeptical of that in common law. Now it's being imported into the contract. And if we uphold, then the next arbitrator can go, oh, this is beautiful. It's just a mistake. They call it silly, but it's just a mistake. I can do it again and rule for the sake of common law, which I don't think is rule of law justice or anything like it. I think it's really important to look at what the arbitrator was talking about when he said substantive due process. I think that's an unfortunate label for what he was doing. But what he was clearly talking about, and he went through this at length, was that he said the company had an obligation to investigate the facts. That, to me, if I were to be asked to call that substantive or procedural, that sounds a lot more like a procedural due process type idea. For whatever reason, he called it substantive. But it certainly bears no resemblance to any of the substantive due process cases in constitutional law that courts are so wary about. It has nothing to do with creating a substantive right. This is something about the process the company followed when it terminated this employee. That's what the arbitrator was talking about. And unfortunately, he used the label substantive, which caused the district court to think of Roe v. Wade and all those other cases, which were worse. As the author of Michigan Family Services, I used to be very proud of it. But I keep getting these cases saying, oh, my, what are we doing here? So tell me how he manages. I feel like every time we say, okay, this super silly idea is legit and we'll hold our nose, look the other way, and let it go, it establishes another benchmark of okay silliness. How do I do that? Can we say today's is silly, but have you ever mentioned the phrase substantive due process again in the course of contract interpretation? That you might as well call fraud or non-interpretation. Is that what it means? Because otherwise, I feel it just grows into greater and greater results during arbitration. And it's really embarrassing to watch and participate in. Well, one point I would make is the substantive due process part, I think, is really a semantical issue because of what I just said about substantive versus procedural. But would you be okay with a ruling that says, this one's silly, but we haven't seen one like it before, but what? Do we have anything like this again? The same interpretation anymore? I think the court would— I'd like to draw lines at some point. Otherwise, it's enabling. I would ask the court to look past the label and look at what the arbitrator was saying. Which is, the court has a due process obligation to investigate the facts before it should automatically terminate somebody. And this is, by the way, one of the numerous things that the arbitrator looked at. This is not—the entire decision did not hinge on this. Actually, you said that the standard is whether the arbitrator was not arguably consuming the contract. What is the contract in this case? The contract is the collective bargaining agreement. The two-year term collective bargaining agreement is the only contract that was at issue in the record in the case. I think it had a term of 2015 to 2017. And so everything the arbitrator did went back to the contract. I mean, there were four articles at issue that the parties, you know, asked the arbitrator to look at. He cited them. He analyzed them. He went through the parties' contentions and each theory of the case. He ruled out two of them. The union lost two of its contract-based arguments about the leave of absence section and schedule of vacations. So he obviously wasn't—he was doing it independently and making his own mind up about what the contract meant. And it all came down to one thing really. Did Article III, which requires just cause for discharge, control the dispute? Or did the attendance control policy of standing alone control the dispute? The union said Article III. The company said attendance control policy. That question, which part of the contract controls, is a classic question of contract interpretation. Just last year, this court in Economy, Limit, and Tau looked at a very similar situation. Another one. It's under the red. And yet they're reported, and they're the law of the circuit. That is contract interpretation, in fact. And, of course, the arbitrator sided with the unions. The ACP says the cause may exist once you get to 12 points. But Article III says just cause. And just cause includes a little bit more than just getting to 12 points. And that is not controversial. I think arbitrators and courts around everywhere would agree with that. So I want to point one thing out before my time expires. Even the district court understood that the arbitrator had interpreted the contract. I'm going to quote very quickly from page 4 of the summary judgment opinion. The arbitrator considered the language of the ACP in conjunction with other provisions of the CBA. That is contract interpretation. Reading a document as a whole, taking this provision, trying to read it in harmony with this other provision, reconciling everything. That is the job of an arbitrator. That's what he did. How was – I realize this is a subject of Congress. It's a contract. They can do what they wish. How were arbitrators selected under this one? Was it one where you took your level of degree? Or was it a list? Or was this person actually someone in the contract who was going to be walking away dead as the arbitrator? No, he wasn't that. He was selected through the Federal Mediation and Conciliation Service. And how does that work? Do both sides kind of let down someone they're comfortable with? Is that how it works, or does one side get to pick? I'll be honest with you. Well, I know it's kind of unilateral. It's not a cooperative decision. I believe the case. And this is not a direct or indirect. I did not participate, so I don't want to go beyond what I know. But I believe there's a system. It's definitely not one side gets to pick. Some contracts could say that. But this contract did not say one side would be able to get to pick. So I think they have a list of eligible arbitrators. So, you know, and there's another quote. Next, the arbitrator considered whether the company discharged Jenkins from just cause as set forth in Article III of the CBA. That's contract interpretation. The district court said he interpreted the contract, which is sufficient under Michigan Family Resources, but he didn't do a legitimate interpretation of the contract. And so he's disagreeing with the arbitrator's reasoning. That's just not enough to make it an award. Thank you. All right, thank you. Let's go back. Good morning. Good morning. Thank you, Your Honors. May it please the court. My name is Catherine Burnett. I'm with Ross Brown Todd, and I represent Epilete Museum Chemical. I'd like to touch on something that the appellant just said, that the arbitrator decided whether Article III or the attendance control policy prevailed. Respectfully, the arbitrator didn't do that. He was not construing the party's agreement, and he was not interpreting the party's agreement. The party sat down and negotiated a no-fault attendance policy. The arbitrator recognized that in his decision. He recognized that that no-fault attendance policy provided that 12 points is cause for termination. He recognized that, and then he set it aside. He cut it out of the party's agreement. But, you know, in Slate's offense, the contract could have been clearer. It could have spelled out that with 12 points, there's nothing to talk about. This is always just cause. We have no discretion and no celerity. It clearly doesn't say that, and adding a little to the confusion is the fact that after 20 years, they had some discretion as to what to do. So, you know, I can imagine you're frustrated in your position with this interpretation. I might not be myself, but I also can see some room for it. Given the equities, you know, I'm a 22-year employee. There was this option. Certainly, Your Honor, but when the party sat down and negotiated this policy, they were clear. The appellant made something of the fact that the parties used the word is, is cause for termination. And the appellant, in their brief, argued that will is a stronger word. We can disagree about that. I think is is pretty definite. It is Friday. It is January. I don't know that that's ambiguous. But if will is the operative word that we like, in the attendance control policy at the top, it says that discipline will be imposed for infractions. It's very clear. And step four is discharge. No, no, that's not quite true. He's not. Because he had more than 20 years. He had more than 20 years. And there is a— Maybe I'm making a mistake here. Am I right? The company had authority to say, we'll give you 30 days. We'll deal with it. The company did have discretion to deal with this problem and support it. Without firing. I thought that was generally wrong. You were correct, Your Honor. So it sort of uses an R on it, in this case. It is automatic unless the company chooses to exercise their discretion only for those 20-plus year employees. It is their discretion. But at the heart of what the company and the union negotiated is a no-fault attendance policy. They said, with the union, we're not going to ask. We're not going to ask the employees why they're not coming to work. Provided it's not one of those things like FMLA that's not covered under the policy. We're not going to ask. Whether they are sick or whether they are fishing, we will not ask. And what the arbitrator's decision did was convert this from a no-fault attendance policy to a fault-based attendance policy. He took away the very essence of what the parties bargained for and said, you, the company, must investigate all of the mitigating circumstances surrounding the felony, and you must evaluate whether you want to exercise your discretion. That is left to your sole discretion. So this is your interpretation of the agreement. There's no doubt the arbitrator was interpreting the agreement. I disagree. Respectfully, I disagree. So the arbitrator in his decision correctly noted that this was a no-fault attendance policy that provided for automatic discipline. That policy was in the agreement. And it's the site which all comes from the agreement. He wasn't interpreting some other agreement or says this is controlled by some other commission. Yes, Your Honor. Absolutely. He was looking at it. So when the arbitrator sat down and evaluated his position, he recognized the no-fault nature of the parties' negotiated policy. He mentions it all over his brief, and then he ignores that part. And he says you have to do an investigation. You have to evaluate your discretion. But if it's a no-fault policy, you don't have to get into asking why. So the arbitration was a result of the broader content bargaining agreement? I'm not sure I understand your question, Your Honor. Mine is a dispute about arbitration. Was it a justice perspective? Was it a dispute to have you got together and said let's arbitrate it, or is there a broader agreement that requires arbitration? There is a broader agreement that requires arbitration. Right. Is that a content bargaining agreement? It is. Do you agree that the content bargaining agreement as a whole is the kind of fact that's being construed by this arbitrator? It is. So isn't this the price of over? You didn't have to pick arbitration. You didn't have to include it on which side. It's a password. You both wanted it. It doesn't matter who you wanted it. Someone ended up there. But you both picked arbitration, so there's no benefits to that. It's supposed to be faster and cheaper. But one reality, you know, across the country from all of us is that the office of compel rights has an ability to challenge the decision of the arbitrator. And the arbitrator, I'm sure, is going to regret it. But that's, again, sort of the cost of the mission. Certainly. Thank you for your question. With binding arbitration, the companies certainly, if the union signed up for it, they might get bad decisions at some point. We prefer good decisions, but you recognize that you might get bad. Getting a bad decision is not the same as getting a decision that ignores the plain language of the contract and dispenses its own brand of industrial justice. And that's what we have here, and that's where the district court vacated. That's a fine line. And so, like I said, there's some frustrations sometimes with where we draw that line. But we seem to draw the line pretty far along the lines of as long as there's any sort of interpretation, what we're going after might seem to be pretty poorly done. But it's arbitration. We agree to it. And that's a separate procedure. And it rarely becomes federal court. Rarely. Rarely is not non-existent. And this court in Michigan family, the Supreme Court in Misko and Garvey, has still held the line that if an arbitration decision ignores the plain language such that it is untethered from negotiated language of the parties, then it doesn't stand. But that is the line too far, and that is what we have here when the arbitrator turned it from a negotiated no-fault policy into an unnegotiated fault-based system that neither of the parties negotiated. What's your best case, even outside of the circuit, that would be analogous to here where a federal court overturned an award of an arbitrator? Certainly. There was actually a case last June out of this court, Technogap, and I believe it's instructed for a number of reasons. In that case, it did involve a no-fault attendance policy. In that case, however, the parties entered into a last-chance agreement. And the arbitrator tried to set aside that last-chance agreement and say, no, we're going to bring this employee back to work. And this court said, you can't do that, because in this case, as spelled out in that last-chance agreement, the parties have predetermined what calls is. And that is what the parties in this case did. They said that discipline will be imposed for attendance fractions, and when you get to 12 points, it is calls for termination. They predetermined what calls would be under their contract. They negotiated that. And because they negotiated it, that is what the arbitrator was required to look at. And that's not what he did in this case. He saw the no-fault nature, and then he set it aside. He dispensed his own brand of industrial justice by requiring the company to investigate the severity of a felony that happened in Florida. He required the company to evaluate a disciplinary suspension in lieu of discharge. But where in the contract did he set out rules about what the arbitrator could look at in the decision? Sure, certainly. Did he say there couldn't be a scottery, or he couldn't require the company to look at the actual facts of what happened? That seems to me fair ground. In a typical arbitration, perhaps. But where you have the no-fault policy where the parties themselves have said we're not going to ask why, these points are the employees to look at. And there is some limitation on the arbitrator's authority. In the arbitration provision of the contract, it does say that the arbitrator shall not add to or modify the contract. He added to by saying I recognize the no-fault nature. I recognize that you did this so you wouldn't have to ask why an employee is missing. But I'm going to force you to look into it. I'm going to force you to do something that's nearly impossible to do in that second guess of criminal justice system in the state of Florida that had already determined that Mr. Jenkins was culpable for the felony. He was dispensing his own brand of industrial justice. It's clear from the opinion when he describes Mr. Jenkins' first felony. You know, before I just throw out something I've already said, but I'm not sure you're going to say something that's over again, so I feel like I need to apologize here. But this could be solved out more clearly. I don't know what else to say. It could be solved out more clearly for all employees. It could be solved out more clearly for those over 20 years that there's no questions asked. Yes, we have discretion. But discretion is not 100% in our terms. It's not as if the just cause is a collateral part of the crime. This is, like, all anyone cares about, or it's certainly one of the top five things they care about. And my view is you would win if it's spelled out that there is no challenge to this discretion. It's automatic at that level. I think you're right. That would be criminal industrial justice, whatever, not a competition. That's just not the case. And I could probably find 100 cases across the country, courts, not arbitrators, where they took a little wiggle room in language, looked at the equities, looked at broader purposes, and got themselves in place with employee one in the contract interpretation. Those are courts that are state and federal courts, and that's just the way it's been. It's not necessarily my approach to interpretation, but there's lots of judges who use it. I don't know how we can say that's not interpretation where I can just guarantee I can find those cases. So that's where I find myself. I don't know how to get to do that. I think it's fair to say that any time two parties sit down to put their agreement on paper, there are ways to make it a little more clear. In this case, though, the attendance control policy is clear. It is a no-fault policy, which by definition means we don't look at fault. It says that step discipline will be implemented. It provides at step four that 12 points is cause for termination. Unless you have more than 12 years. And then the company has the discretion to evaluate otherwise. Any other questions? I think we're in the chamber. Everybody in the chamber? Thank you. Thank you. So long. Good luck. The court must honor the contract. Whatever else this contract says, Article 11 says the arbitrator's decision shall be final and binding on the parties. It's crystal clear. Why isn't the language no-fault policy enough to say that you have to follow just that particular provision? You can't be importing in other definitions from just cause? One point, the contract doesn't say no-fault. That's a label that the company and even the arbitrator use. I'm not going to quibble about it. Okay, so it's not in the contract itself that it's a no-fault? I don't believe so. I've read through it several times, and I don't see why it's no-fault. So this language used by the arbitrator. It's a care provision for us. So there are two cases. Can I just ask you a question? Would you agree with me that under Michigan Family Services we can review, we can reverse an arbitrator's decision? So certainly everything is the same in this case. Same accolades, but it spells out two things. It says it is no-fault. If you get that, that is just cause, end of story, there's nothing to talk about. We have one modest exception for trying to limit people, but that is solely, solely within the discretion of the company. So it ties it up as tightly as can be. We would have to reverse a decision that said no to that under subsidy process or other principles. Would you not agree about that or not agree about that? When a situation where there's absolutely no plausible way that that works. It's what I just described. It's this contract, which he just spells out both of these and ties it up at the end. It says this is discretionary, solely in the company's discretion, and this is automatic otherwise. Michigan Family certainly says that if there's no plausible way to do what the arbitrator did, then yes, the court can maintain that award. I will say, though, even when a contract gives discretion to the arbitrator, just like this court says with regard to district courts, there has to be a thoughtful exercise of that discretion. And what the arbitrator found here was that the company did not exercise discretion. It didn't even think about it. And that is an abuse of discretion even under the court's cases starting at the district court. So I wouldn't make that argument. In my example, I don't understand why the company would have had to do it. I don't think, in my example, the company would have had to look at the facts of the Florida crime. Is that what happened? Just a crystal clear rule? If they tied up that need to be in the contract and it said it's automatic regardless of anything else, then yes. I mean if it's inescapable, the court does have a sliver of ability to vacate an award based on merits, but only because it's concluding that the arbitrator really wasn't doing an arbitrator's job. Not because it's a really bad decision, but because it shows that there's no way the arbitrator could have been trying to apply the contract in good faith. That's really the issue. But I will look at the language of this contract. If you want to talk about mandatory language of determination, in the ACP, there's a special provision for no-call, no-shows. And it says that any no on no-call, no-show, less than three can— Excuse me. Yes, excuse me. Go ahead. It says any no-call, no-show, less than three consecutive work days is considered job abandonment and will result in immediate termination of employment. That is pretty clear. But that's not our situation. This was not a no-call, no-show. He and the union went to the company before he was absent. Do you see that? Might I use that as an example of language that are appreciated in the country? Well, that's— I'm bringing you to a test a little bit out here. I think it's much clearer than what we're dealing with here. But I just want to leave with one point. You know, this hands-off standard the court has, sometimes that's going to fare with the company. Sometimes that's going to fare with you. Does that really ensure the practice? Does it really work that way with these cases? Well, I don't have the overview that your Honor does because I haven't seen as many of these cases. But it certainly could work both ways. It just depends on who wins. Or the selection of the decision-makers. But in the long run, the standard benefits everybody because the parties get a fast, economical, and above all, final solution to their disputes. And that's exactly the purpose of an arbitration case. Thank you. All right. Thank you, Mr. Long. We appreciate both of your arguments. Thank you for your time. If you have any questions that you want us to reshape, please submit them.